IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 25-10895

_____

LANA PATRICK,

Plaintiff - Appellant,

versus

OFFICER GRAHAM,
Individual Capacity, Duval County Police Department,
SERGEANT WILSON,
Individual Capacity, Duval County Police Department,

Defendants - Appellees.

_____

Brief

_____

Lana Patrick Pro Se
9378 Arlington Expy
PMB 204
Jacksonville, FL 32225
thejtownpress@gmail.com
(904) 524-6030

## Statement Regarding Oral Argument

I am not requesting any oral argument. The written argument is more than sufficient.

## **Table of Contents**

Statement Regarding Oral Agruement.......................................................  i

Table of Contents...................................................................................  ii

Table of Authorities...............................................................................  iii

Jurisdictional Statement.........................................................................  v

Statement of the Issues..........................................................................  1

Statement of the Case............................................................................  1

    Nature, Course of Proceedings, and Disposition Below .............  1

    Statement of Facts ...........................................................................  2

        A. About Lana Patrick........................................................  2

        B.  The Pertinent Facts......................................................  2

Summary of the Arguement....................................................................  3

Arguement..............................................................................................  4

    1.  The district court erred when it applied a forum analysis to a non-expressive step in the speech creation process.

    2.  The district court erred when it stated the defendant gave me a lawful order to sit or talk to a media person.

    3.  The district court erred when it labeled my disagreement with the defendants unlawful order as a disturbance.

    4.  The district court erred by assuming the defendant had any authority to ask me to sit, talk to a media person, or leave without the board approval.

    5.  The district court erred in stating that a seizure did not take place.

Conclusion..............................................................................................  12

Certificate of Compliance......................................................................  14

Certificate of Interested Parties............................................................  15

Certificate of Service.............................................................................  16

## Table of Authorities

**Cases:**                                                    **Page(s)**

Gordon Price v. Merrick Garland

     No. 21-5073 (D.C. Cir. 2022).....................................    4, 6

Arkansas  Educ. TelevisionComm'n  v. Forbes

     523 U.S. 666, 672-73 (1998).......................................    4

Lewis v. Baxley

     368 F. Supp. 768, 777 (M.D. Ala. 1973)....................    4

Zemel v. Rusk

     381 U.S. 1, 16-17 (1965)...............................................    5

Branzburg v. Hayes

     408 U.S. 665, 684 (1972)..............................................    5

Pell v. Procunier

     417 U.S. 817, 833 (1974)......................................    5

Houchins v. KQED, Inc.

     438 U.S. 1, 2 (1978).....................................................    5

Iacobucci v. Boulter

     193 F.3d 14 (1st Cir. 1999)..........................................    6, 8

Pitta v. Medeiros

     90 F.4th 11, 20 (1st Cir. 2024)..................................    6

US v Heard

     11th circuit unpublished No. 17-12397..................    9

Terry v. Ohio

     392 U.S. 1,16 (1968)...................................................    11

Torres v. Madrid

     No. 19-292, slip op. at 17 (U.S. Mar. 25, 2021)........    11

**Statutes:**

39 CFR 232.1(i).........................................................    7

41 CFR 102-74.420(c)..............................................    7

38 CFR 1.218(a)(10)................................................    7

**Letters:**

DOJ civil rights division Sharp v Baltimore
guidance letter

     Pg 4. 5/14/2012...........................................    7

**Books:**

The General Principles of Constitutional Law in the
United States of America

     page 301 Thomas McIntyre Cooley Jan 1898 ·
     Little, Brown...............................................    12

**Policies:**

Duval County School Board Policy Manual

     ch 2.26 (6)(b)..............................................    8

## Jurisdictional Statement

The district court had subject matter jurisdiction over Patrick's § 1983 claims under 28 U.S.C. §§ 1331and 1343.

This court has jurisdiction over this appeal under 28 U.S.C. § 1291. It is considered an appeal from a final decision because the basis of this appeal is the district court's dismissal.

This appeal is properly before this Court because this appeal is taken from the United States District Court for the Middle District of Florida. See 28 U.S.C. §§41, 1294(1).

This appeal is timely. The district court denied immunity on March 12, 2025. (Dkt32) Patrick appealed on March 19, 2025. (Dkt33) See 28 U.S.C. § 2107(a).

**Statement of the Issues**

I. The district court erred by analyzing my first amendment claim under the forum doctrine instead of the right of access doctrine.

II. Is being told to sit when you have no obligation to, no rule, no sign, no board member complaining, a lawful order?

III. Is quietly disagreeing with an unlawful order considered a disturbance?

IV.  Is it random cops or the board that usually decides if a person is being disruptive, needs to sit, or be escorted out? I referenced Roberts rules and saw no mention of random officers having the authority to decide any of those issues during a board meeting.

V. Is it a violation of my right of access to hold an open meeting in a building that requires identification to enter?

VI. Is the right to watch government employees in the course of their duty clearly established by the right to free press?

VII. Did the court err by saying I didn't provide any clear authority establishing that I could stand in the aisle, refuse to take a seat, etc. when they provided no clear authority that I couldn't stand in the aisle, or refuse to sit or speak with a media person?

VIII. Did the court err by saying someone putting hands on, squeezing my arm and propelling me in a direction I didn't want to go when not required wasn't excessive force?

**Statement of the Case**

**Nature, Course of Proceedings, and Disposition Below**

This 1983 action arose from an incident at the Duval County School Board in Jacksonville Florida.

**1**

**Statement Of Facts**

The complaint makes the following factual allegations, as supplemented by video.

    **A.** Plaintiff, proceeding pro se, filed a Complaint for Violation of Civil Rights ("Complaint") against Defendants, two Duval County School Board ("DCSB") officers, seeking relief under 42 U.S.C. § 1983 ("§ 1983"). Doc. 1. All claims stem from the efforts of Plaintiff, "an independent Journalist/Activist[,]" to attend a DCSB meeting on March 12, 2024. See id. at ¶¶ 1, 4-22. Count One alleges Defendants violated Plaintiff's First Amendment rights by removing and trespassing me from the building where the meeting was held. See id., ¶¶ 15-16. Count Two alleges the same conduct was an unlawful "prior restraint" that restricted my "ability to gather information to disseminate to the public." See id., ¶¶ 17-18. Count Three alleges Defendant Graham violated Plaintiff's Fourth Amendment rights by using excessive force to unlawfully remove me from the building. See id., ¶¶ 19-20.

This is an action brought by me Pro Se on June 10th, 2024 (DKT 1), defendants filed two motions to dismiss July 11th, 2024 (DKT 8&9). On July 22nd, I filed my response to the 2nd motion to dismiss (DKT 10), Status conference held on August 8th, 2024 (DKT 12). Defendants first motion to dismiss filed August 23rd 2024(DKT 16), I responded on September 9th, 2024 (DKT 18). The magistrates report and recommendation came out November 20th, 2024 (DKT 25), I objected on December 2nd, 2024 (DKT 29). The report was adopted March 12th, 2025 (DKT 32), I timely appealed March 19th, 2025 (DKT 33).

## Summary of the Argument

The district court erred when it applied a forum analysis to a non-expressive step in the speech creation process. It should have applied a right of access analysis instead.

The district court erred when it stated the defendant gave me a lawful order to sit or talk to a media person.

The district court erred when it labeled my disagreement with the defendants unlawful order as a disturbance.

The district court erred by assuming the defendant had any authority to ask me to sit, talk to a media person, or leave without the board approval.

The district court erred in stating that a seizure did not take place.

**Argument**

First and foremost we want to address the forum doctrine application being applied to the gathering of news. The right of access to gather news has always been equal to the access the general public enjoys, and the Supreme Court has warned us about applying the forum doctrine in a mechanical way not consistant with how its been applied traditionally.

> *In reaching this conclusion we are buoyed by the Supreme Court's warning against extending the public forum doctrine "in a mechanical way" to contexts that meaningfully differ from those in which the doctrine has traditionally been applied. Gordon Price v. Merrick Garland, No. 21-5073 (D.C. Cir. 2022) quoting   Arkansas  Educ. TelevisionComm'n   v. Forbes, 523 U.S. 666, 672-73 (1998)*

The forum doctrine traditionally has been applied to expressive acts only, in fact every landmark case dealt with expressive activity only. At no time has it been used to restrict access to information in an area the public is allowed and there is no expectation of privacy.

When we think of the individual right of free press and how each citizen has that right, it is only logical that the right of access is equal since the press and the people are one and the same.

> *"Therefore, we hold that members of the press have a limited First Amendment right of reasonable access to news of state government. In the context of this case, that means that newsmen have a right to go where the public generally may go in observance of its government." Lewis v. Baxley, 368 F. Supp. 768, 777 (M.D. Ala. 1973)*

The co-equal access doctrine is well established in law with cases like

Branzburg v. Hayes, Pell v Procunier and Houchins v. KQED.

> *It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. Zemel v. Rusk, 381 U.S. 1, 16-17 (1965);*
>
> *Branzburg v. Hayes, 408 U.S. 665, 684 (1972)*
>
> *""It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. . . ."*
> *Pell v. Procunier, 417 U.S. 817, 833 (1974)*
>
> *"MR. JUSTICE STEWART, while agreeing that the Constitution does no more than assure the public and the press equal access to information generated or controlled by the government once the government has opened its doors" Houchins v. KQED, Inc., 438 U.S. 1, 2 (1978)*

The doctrine has never been equal access except in limited and non public forums. None of the right to record cases use forum analysis or mention public forum. They all mention public places, not public forums and Price v Garland discusses that as well.

> *We understand these cases as standing for the proposition that it is unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property, so long as the recording does not interfere with the performance of the official's duties.*

> *"Such peaceful recording of [the performance of a public duty] in a public space . . . is not reasonably subject to limitation." Glik, 655 F.3d at 84. This helps explain why these cases make no effort to determine whether the location of the recording is a public forum: Because prohibiting the recording of a public official performing a public duty on public property is unreasonable, the specific nature of the public property is irrelevant.*
>
> *Gordon Price v. Merrick Garland, No. 21-5073 (D.C. Cir. 2022)*

The first circuit recently decided a case where it reffirmed its definition of "public spaces" where recording is allowed.

> *In Project Veritas, we noted that "[o]ur cases have fleshed out the contours of [the public space] category":*
>
> *traditional public fora, such as public parks like the Boston Common (which was the site of the recording in Glik, 655 F.3d at 84); the sites of traffic stops, including those that occur on the sides of roads, see Gericke, 753 F.3d at 8 . . . ; and other "inescapably" public spaces, id. at 7, such as the location of the recording that occurred in Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999), which concerned a journalist's arrest for openly recording members "of the Pembroke Historic District Commission" that were having a conversation in "the hallway" of the town hall immediately following an open public meeting, id. at 17-18.*
> *Pitta v. Medeiros, 90 F.4th 11, 20 (1st Cir. 2024)*

The hallway in Iacobucci was an inescapable public space because it was a area open to the public. This is a commonly understood first amendment principal, the federal government realizes this and makes regulations to make sure our rights are respected.  39 CFR 232.1(i), 41 CFR 102-74.420(c) and 38 CFR 1.218(a)(10) all allow for recording for news purposes without permission in the public areas.

The department of justice civil rights division went so far as to write a guidance letter to the baltimore police stating

> *BPD should clarify that the right to record public officials is not limited to streets and sidewalks – **it includes areas where individuals have a legal right to be present**, including an individual's home or business, and common areas of public and private facilities and buildings.*
>
> *DOJ civil rights division Sharp v Baltimore guidance letter Pg 4.   5/14/2012*

This case isn't one in which the forum doctrine should even be mentioned because there is no regulation against recording open meetings and I am not challenging a policy or regulation that restricts expressive activity.

The case is about removing me from a place I had a right to be, for doing no more then exercising my right to gather information.

This isn't a case of me creating a disturbance or not sitting down. This is a case of retaliation pure and simple. Defendants were upset that I stood on my right to enter the meeting without providing identification. Why else would they be behind me 40 seconds after I got in, telling me to sit down like I'm a dog or something.

As in the Iacobucci case, an officer can't just give an unlawful order and then arrest or trespass the person if they disobey it.

> *A police officer is not a law unto himself;  he cannot give an order that has no colorable legal basis and then arrest a person who defies it.*
> *Iacobucci v. Boulter, 193 F.3d 14 (1st. Cir. 1999)*

We have the same situation here, defendants can not give me an order with no colorable legal basis and then trespass me when I defy it. There is a number of reasons why, but the main one is that in a board meeting, they have the power to remove someone if they are causing a disturbance.

> *7. If after at least one warning from the Chairperson, a person or persons  continues to disrupt the meeting by words or actions, then the  Chairperson shall direct law enforcement to remove the person from  the meeting and the building.*
> *Duval County School Board Policy Manual ch 2.26 (6) (b)*

We can see from the video that I got no warning, for two reasons, the first is the fact that I had only been there 40 seconds, the other being that I wasn't being disruptive in the slightest. There is no way a reasonable officer would believe he has the authority to go into a board meeting, give unlawful orders and remove someone all without the consent of the board.

One would be left trying to logically understand how he thought telling someone to sit down was a lawful order to begin with.

First, there is no law, regulation, ordinance, policy, sign or even rumor that I need to sit. In fact, because of the topics I cover most meetings are standing room only.

However, if my standing was interrupting the meeting, it would have been the the board who would of asked me to take a seat. The fact was defendants didn't know if I was going to sit or not, they never gave me the chance. I could of been standing to look over the room to see where I could capture the best video, they wouldn't know because they were on me within 40 seconds.

I understand the importance of obeying a lawful order. I also understand that not everything an officer says is a lawful order. Defendants order to sit was as lawful as an order to hop on one foot would have been.

If in fact that had been a lawful order, it would of meant that I was detained at that time without reasonable suspicion of a crime or criminal activity.

> *Dilworth's orders to Heard to keep his hands at his side or to raise his hands were not requests but rather commands that clearly "convey[ed] a message that compliance . . . [was] required." Bostick, 501 U.S. at 435.   Thus, we analyze whether the officers had reasonable suspicion at this moment in time,*
> *US v Heard 11th circuit unpublished No. 17-12397;  1:15-cr-00245-WSD-CMS-1*

**9**

The district court wants us to believe the defendants gave us a lawful order, but did not seize us.

Their theory seems to be that the defendants can tell anyone to "sit" and it must be obeyed or you risk removal, trespass, or possible arrest. However, it's not a seizure, but if it was, the officer has qualified immunity because there is no clear law against it.

I of course beg to differ, I don't think any reasonable officer would believe he could give an order not backed by law and then seize the person who disregards his unlawful order.

I also don't think any reasonable officer could believe he could just grab someone and "guide" them from where they are legally allowed to be, especially when they have no suspicion of criminal activity at all.

Under my analysis, a seizure occurred when defendant grabbed me and propelled me in a direction different then I wanted to go. As noted in my earlier filings, the empty hand control soft technique is done to *restrain* individuals you *suspect have broken a law*.

A simple leave or you will be arrested for trespassing would of sufficed and not been an unreasonable use of force. Anything above verbal by definition in this case would be excessive.

We know a seizure takes place when by use of physical force or a show of authority a persons liberty is restrained.

> It must be recognized that, whenever a
> police officer accosts an individual and
> restrains his freedom to walk away, he
> has "seized" that person.
> Terry v. Ohio, 392 U.S. 1,16 (1968)

In this case, we know that I was not free to walk away. In fact, I was propelled in a direction that I didn't want to go. Thus clearly meeting the elements of being seized, of which the seizure was unlawful and excessive.

Since the seizure, being unlawful, as they had no reasonable suspicion I was involved in any criminal activity, thus any use of force above verbal is excessive.

The district court tells us that the right to be free from seizure without reasonable suspicion isn't well established. It also tells us that our liberty interest in public property open to the public and our right of access to gather information are not well established, and can be revoked by an ego driven officer upset that I exercised my right to not identify to get into the meeting.

> *The application of physical force to the*
> *body of a person with intent to restrain*
> *is a seizure even if the person does not*
> *submit and is not subdued. Torres v.*
> *Madrid, No. 19-292, slip op. at 17 (U.S.*
> *Mar. 25, 2021).*

## CONCLUSION

This isn't a case about the defendants enforcing school board decorum, if so they would have waited until the board asked them to have me sit or leave. This was about hurt egos and showing me who was boss. They accosted me 40 seconds of entering the meeting, even flash gorden couldn't cause a disturbance that fast.

These defendants knew exactly what they did, which is why one of them had my news report of the incident removed from YouTube.

There is no way qualified immunity could survive as even the cadets from the 1980's movie "police academy" knew you cant seize someone with reasonable suspicion.

The right to gather information on our public employees is also a well established right that was violated by my unlawfull removal. The right to gather information about public employees to disseminate to fellow citizens is the constitutional essence of the right to free press.

> But in a constitu- tional point of view its chief importance is , that it enables the citizen to bring any person in authority , any public corporation or agency , or even the government in all its departments , to the bar of public opinion , and to compel him or them to submit to an examination and criticism of conduct , measures , and purposes in the face of the world , with a view to the correction or prevention of evils ; and also to subject those who seek public positions to a like scrutiny for a like purpose.
>
> The General Principles of Constitutional Law in the United States of America, page 301
> Thomas McIntyre Cooley
> Jan 1898 · Little, Brown

The claims are clear and the violations well established, we humbly ask this court to reverse the district courts order and remand this case for further proceedings so that truth may find its way to the light.

Respectfully submitted,

**Lana Patrick Pro Se**
**9378 Arlington Expy**
**Jacksonville FL 32225**
**904-524-6030**
**thejtownpress@gmail .com**

No. 25-10895
Patrick v Graham

**Certificate of Compliance**

This brief complies with the type-face requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief complies with the type-volume limitations in Federal Rule of Appellate Procedure 32(a)7(B)(i) because it contains less than 13,000 words, excluding the parts of the brief that are exempt under Federal Rule of Appellate Procedure 32(f) and 11th Cir. R. 32-4.

Lana Patrick Pro Se

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT (CIP)**

_____ *vs.* _____ Appeal No. _____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed.  Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court.  **You may use this form to fulfill these requirements.**  In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Submitted by:

Signature: _____
Name: _____ Prisoner # (if applicable): _____
Address: _____
Telephone #: _____

Rev.: 2/23

15

No. 25-10895

Patrick v Graham

**Certificate of Service**

I certify that on April 26th, 2025, I served a copy of this Brief upon the following persons by United Parcel Service , postage prepaid and properly addressed:

Mary Margaret Giannini
Assistant General Counsel
117 West Duval Street, Suite 480
Jacksonville, FL 32202

Lana Patrick Pro Se
9378 Arlington Expy
Jacksonville FL 32225
904-524-6030
thejtownpress@gmail.com