IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

## APPEAL NO. 25-10895

Lana Patrick
Appellant,

v.

C. Graham and J.T. Wilson,
Appellees.

Appeal from the United States District Court
for the Middle District of Florida
District Court Case No.:  3:24-cv-580-WWB-SJH

BRIEF OF APPELLEES
C. GRAHAM AND J.T. WILSON

**OFFICE OF GENERAL COUNSEL**

Mary Margaret Giannini (1005572)
Assistant General Counsel
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100 - Telephone
(904) 255-5120 – Facsimile
mgiannini@coj.net
ipatori@coj.net
*Counsel for Appellee*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and the applicable Rules of the Eleventh Circuit Court of Appeals, Appellees, C. Graham and J.T. Wilson, submit the following certificate of interested persons and corporate disclosure statement:

- Berger, Honorable Wendy, W., United States District Court, Middle District of Florida

- Feiser, Craig, former Appellees' Counsel

- Giannini, Mary Margaret, Appellees' Counsel

- Graham, G., Appellee

- Horovitz, Honorable Samuel, J., United States Magistrate Judge, Middle District of Florida

- Patrick, Lana, Appellant *pro se*

- Toomey, Honorable Joel, United States Magistrate Judge, Middle District of Florida

- Wilson, J.T., Appellee

Per Circuit Rule 26.1-2(c), Appellees C. Graham and J.T. Wilson certify that the CIP contained herein is complete.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees submit that oral argument is unnecessary for the resolution of this appeal and will not aid the decisional process of the Court, as the record below firmly supports the District Court's order.

## **TABLE OF CONTENTS**

Certificate of Interested Persons ............................................................ i

Statement Regarding Oral Argument ................................................... ii

Table of Contents ................................................................................. iii

Table of Citations.................................................................................. vi

Statement of the Issues ..........................................................................1

Statement of the Case and Facts ............................................................2

    A. Statement of the Case...................................................................2

    B. Statement of Facts .......................................................................4

    C. Standard of Review ......................................................................6

Summary of the Argument .....................................................................6

Argument ...............................................................................................9

I.    THE DISTRICT COURT'S APPLICATION OF A FORUM
ANALYSIS WAS APPROPRIATE TO EVALUATE PATRICK'S
FIRST AMENDMENT CLAIMS (COUNT I & II) BECAUSE
SCHOOL BOARD MEETINGS ARE LIMITED PUBLIC FORUMS
.........................................................................................................9

    A.    Patrick waived on appeal whether the District Court erred in
using a forum analysis to evaluate her First Amendment
claims (Counts I and II) ...................................................9

    B.    The District Court did not err by invoking a forum analysis to
analyze Patrick's First Amendment claims ..........................11

II.    PATRICK FAILED TO PLAUSIBLY ALLEGE A CLAIM OF FIRST AMENDMENT PRIOR RESTRAINT AGAINST THE OFFICERS AND OTHERWISE WAIVED THE RIGHT TO CHALLENGE THE VALIDITY OF THE DCSB'S IDENTIFICATION REQUIREMENT....................................................................17

    A.    Patrick failed to sufficiently develop on appeal a challenge to the DCSB's identification requirements ...........................17

    B.    Patrick failed to sufficiently allege a First Amendment claim against the officers because there is not a clearly established right to enter a public building without having to show identification....................................................................18


III.   PATRICK FAILED TO SUFFICIENTLY ALLEGE A FIRST AMENDMENT CLAIM AGAINST THE OFFICERS BECAUSE THERE IS NOT A CLEARLY ESTABLISHED RIGHT TO BEHAVE WITHOUT RESTRICTIONS IN A LIMITED PUBLIC FORUM ....19


IV.    PATRICK FAILED TO SUFFICIENTLY ALLEGE A CLAIM OF EXCESSIVE FORCE AGINST OFFICER GRAHAM BECAUSE HE DID NOT SEIZE HER AND HIS ACTIONS WERE NOT UNREASONABLE ....................................................................22


V.    PATRICK FAILED TO PLAUSIBLY ALLEGE A CLAIM OF "SUBSEQUENT PUNISHMENT" AGAINST WILSON, AND OTHERWISE WAIVED HER RIGHT TO CHALLENGE THE DISTRICT COURT'S DISMISSAL OF THIS COUNT...................27


    A.    Patrick failed to raise on appeal the District Court's dismissal of Count IV ....................................................................27

    B.    Patrick failed to plausibly allege a claim of "subsequent punishment" against Wilson..........................................29

Conclusion ...................................................................................... 31

Certificate of Compliance ............................................................. 32

Certificate of Service .................................................................... 33

## <u>TABLE OF CITATIONS</u>

**Cases**                                                          **Page No.**

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004) ............ 11

*Alexander v. United States*, 509 U.S. 544 (1993) ............................................. 30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 6, 29

*Baker v. City of Madison, Ala.*, 67 F.4th 1268 (11th Cir. 2023) .............. 4, 6, 22

*Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209 (11th Cir. 2017) ............... 30

*Baxter v. Santiago-Miranda*, 121 F.4th 873 (11th Cir. 2024) .................. 18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 6, 18, 31

*Blackston v. Ala.*, 30 F.3d 117 (11th Cir. 1994) ............................ 13, 15, 21, 31

*Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011) ....................................... 12

*Blue v. Lopez*, 901 F.3d 1352 (11th Cir. 2018) ............................................... 11

*Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340 (11th Cir. 2007) ........ 10

*Branzburg v. Hayes*, 408 U.S. 665 (1974) ................................................. 10, 15

*Cable News Network, Inc. v. Am. Broadcasting Co.*, 518 F. Supp. 1238 (N.D. Ga. 1981) ..................................................................................................... 12

*Campaign for a Prosperous Georgia v. S.E.C.*, 149 F.3d 1282 (11th Cir. 1998) ............................................................................................................. 27, 29

*Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194 (11th Cir. 2012) . 23, 25

*Charles v. Johnson*, 18 F.4th 686 (11th Cir. 2021) .................................. 20, 25

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................. 31

*Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005) .......................................... 10

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) ..... 12

*Cornett v. Sixteen Unknown Named Court Marshals*, No. 91 Civ. 4795 (JFK), 1992 WL 96367 (S.D.N.Y. Apr. 28, 1992). .................................................. 19

*Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200 (N.D. Fla. 2022) ... 13

*Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011) .................................... 25, 26

*Crosby v. Monroe County,* 394 F.3d 1328 (11th Cir.2004).............................. 26

*Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009) .................................................. 6

*Davis v. Scherer*, 468 U.S. 183  (1984)............................................................ 20

*Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612 (11th Cir. 2021). 10, 11, 20

*Florida v. Bostic*, 501 U.S. 429 (1991) ............................................................. 23

*Foti v. McHugh*, 247 F. App'x 899 (9th Cir. 2007) .......................................... 19

*Fowler v. Jones*, 899 F.2d 1988 (11th Cir. 1990)....................................... 11, 20

*Gold v. City of Miami,* 121 F.3d 1442 (11th Cir.1997)..................................... 26

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001) .............. 14, 20

*Graham v. Connor*, 490 U.S. 386 (1989)......................................................... 25

*Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56 (1982) ......................... 28

*Grimes v. Florida*, 71 F. Supp. 3d 1319 (M.D. Fla. 2014) .............................. 31

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................... 18

*Harris v. McAlistor*, 22-cv-75-LJV-JJM, 2023 WL 5830337  (W.D. N.Y. Sept. 8, 2023)........................................................................................................ 24

*Hass v. Monier*, No. NH CA 80-169 MML, 2009 WL 1277740 (D.N.H. April 24, 2009).................................................................................................... 19

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978)..................................................... 10

*Immigr. & Naturalization Serv. v. Delgado*, 466 U.S. 210 (1984) .................. 22

*In re Walker v. Walker*, 515 F.3d 1204 (11th Cir. 2008) .................................. 28

*IndexNewspapers LLC v. U.S. Marshals Servs.*, 977 F.3d 817 (9th Cir. 2020) .............................................................................................................. 15

*Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343 (11th Cir. 2024) ....................... 4

*John K. MacIver Instit. for Pub. Pol'y v. Evers*, 994 F.3d 602, 609, 613-14 (7th Cir. 2021)............................................................................................. 14, 15

*Jones v. City of Dothan,* 121 F.3d 1456 (11th Cir.1997) ................................. 26

*Marek v. Singletary*, 62 F.3d 1295 (11th Cir. 1995)................................. 27, 29

*McDonough v. Garcia*, 116 F.4th 1319 (11th Cir. 2024)..................... 14, 16, 20

*Michigan v. Chesternut*, 486 U.S. 567 (1988) .................................................. 22

*Mocek v. City of Albuquerque*, CIV-11-1009 JB/KBM, 2013 WL 312881 (D.

    N.M. Jan. 14, 2013) .................................................................................. 14, 16

*Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) ............................................... 26

*P.G. Pub. Co. v. Aichele*, 705 F.3d 91 (3d Cir. 2013) ..................................... 15

*Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 1353 (M.D. Fla. 2012)... 31

*Patrick v. McGuire*, No. 8:24-cv-000-MSS-NHA, 2024 WL 4803217 (M.D. Fla.

    Nov. 15, 2024) .......................................................................................... 13, 16

*Peery v. City of Miami*, 977 F.3d 1061 (11th Cir. 2020)................................. 23

*Pell v. Procunier*, 417 U.S. 817 (1974) ........................................................... 10

*Pitta v. Medeiros*, 90 F.4th 11 (1st Cir. 2024) ................................................ 15

*Plonka v. Borough of Susquehanna*, 3:17-cv-00262, 2017 WL 1036478 (M.D.

    Pa. March 17, 2017).......................................................................................... 24

*Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990) ......................................... 18

*Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022)........................................... 16

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)........................ 15

*Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015) ................................... 23, 24, 25

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014).... 17, 27,

    29

*Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115  (M.D. Fla. 2019) 13,

    14, 15, 21

*Sheppard v. Beerman*, 18 F.3d 147 (2nd Cir. 1994) ........................................ 24

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)............... 13, 15, 21

*Stevens v. Plumbers & Pipefitters Local 219*, 812 F. App'x 815 (11th Cir. 2020) ............................................................................................................ 28

*TGP Comm., LLC v. Sellers*, No. 22-16826, 2022 WL 17484331 (9th Cir. Dec. 5, 2022) ........................................................................................ 12, 14, 15

*Tisdale v. Gravitt*, 51 F. Supp. 3d 1378 (N.D. Ga. 2014) .................... 14, 15, 20

*Torres v. Madrid*, 592 U.S. 306 (2021) ............................................................ 23

*Torres v. Pasco Cnty. Bd. of Cnty. Comm'rs*, 8:21-cv-892-TPB-JSS, 2022 WL 1121041 (M.D. Fla. April 14, 2022) ............................................... 19

*Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160 (11th Cir. 2005) .................... 22

*United States v. Drayton*, 536 U.S. 194 (2002) ................................................ 22

*United States v. Knights*, 989 F.3d 1281 (11th Cir. 2021) ........................ 22, 25

*United States v. Schultz*, 565 F.3d 1353 (11th Cir.2009) ......................10, 20

*United States v. Smith*, 426 F.3d 567 (2d Cir. 2005) ...................................... 19

*United States v. Turner*, 474 F.3d 1265 (11th Cir. 2007) ............................... 11

*West v. Davis*, 767 F.3d 1063  (11th Cir. 2014) .............................................. 24

*Whiteland Woods, LP v. Township of West Whiteland*, 193 F.3d 177 (3d Cir. 1999) 12, 14

*Youkhanna v. City of Sterling Heights*, 934 F.3d 508 (6th Cir. 2019)      23

**Rules**                                                                    **Page No.**

11TH CIR. R. 3-1 ............................................................................................. 6, 10

11TH CIR. R. 36–2 ............................................................................................. 10

FED. R. APP. P. 3(c) .......................................................................................... 28

FED. R. CIV. P. 8(a)(2) .............................................................................. 7, 22, 29

FED. R. CIV. P. 12(b)(6) ........................................................................... 7, 22, 29

## <u>STATEMENT OF THE ISSUES</u>

1.    Was the District Court's use of a forum analysis appropriate to evaluate Patrick's First Amendment claims?

2.    Did Patrick properly raise on appeal that Appellees Graham and Wilson violated her First Amendment rights to gather and disseminate information to the public by requiring that she show identification prior to entering the Duval County School Board (DCSB) meeting?

3.    Did Patrick fail to sufficiently plead that Appelless Graham and Wilson violated her First Amendment rights to gather and disseminate information to the public by removing her from the DCBS meeting for being disruptive?

4.    Did Patrick fail to sufficiently plead that Appellee Graham violated her Fourth Amendment rights by using excessive force against her?

5.    Did Patrick properly raise on appeal whether the District Court erred in determining she failed to  sufficiently allege a claim of First Amendment "subsequent punishment" against Appellee Wilson?

## STATEMENT OF THE CASE AND FACTS

### A.    Statement of the Case[1]

Patrick filed the instant lawsuit on June 10, 2024, against Graham and Wilson (DCSB police officers) in their individual capacities. ECF1 at 2. She asserted the officers violated her First Amendment rights by "trespassing [her] from a public place where [she] was allowed to be in doing a constitutionally protected activity of gather[ing] information to disseminate," (Count I), *id.* at ¶15-16; that the officers committed a "prior restraint by restricting [her] ability to gather information to disseminate to the public" in violation of the First Amendment, (Count II), *id.* at ¶17-18; that Graham used excessive force when he removed her from the DCSB building, (Count III), *id.* at ¶19-20; and that Wilson violated her First Amendment rights by putting a "privacy strike on [her] news report and having it removed from [Y]ou[T]ube," (Count IV). *Id.* at ¶21-22.

Graham and Wilson moved to dismiss, asserting that pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), Patrick's Complaint failed to state claims for which relief could be granted, and that the officers were entitled to qualified immunity. ECF16. After full briefing, United States

---

[1]References to District Court filings will be referred to as "ECF __"; Patrick's initial brief will be cited by reference to the Appellate docket (e.g. "Doc.9 at ___"); Appellant will be referred to as "Patrick;" and Appellees will be referred to as "Graham," "Wilson," and/or "officers."

Magistrate Judge Samuel Horovitz issued a Report and Recommendation. ECF25. He recommended that Counts I-III of Patrick's Complaint be dismissed with prejudice on the ground that she failed to sufficiently plead a cause of action against Graham and Wilson, and that the officers were entitled to qualified immunity. ECF25 at 9-21. Judge Horovitz recommended however that Count IV be dismissed without prejudice, and Patrick be granted leave to amend. *Id.* at 18-21. After Patrick submitted her objections to Judge Horovitz's Report and Recommendation, *see* ECF29, District Judge Wendy Berger entered an Order adopting the Report and Recommendation. ECF32. Judge Berger granted Wilson and Graham's Motion to Dismiss Counts I-III with prejudice; dismissed Count IV without prejudice; and granted Patrick leave to file an amended complaint as to Count IV no later than March 25, 2025. *Id.* at 5-6. Patrick filed her Notice of Appeal on March 25, 2025. Doc.1.[2]

---

[2] Six days later, on March 25, 2025, Patrick filed an Amended Complaint. ECF35 (filed March 25, 2025). Graham and Wilson filed a motion to strike, or in the alternative, a motion to dismiss the amended complaint. ECF37. Judge Horovitz issued a Report and Recommendation on May 28, 2025, recommending that the Amended Complaint was due to be struck. ECF41 at 5. Patrick did not file any objections to the Report and Recommendation, and on June 26, 2026, Judge Berger adopted the Report and Recommendation, struck Patrick's Amended Complaint, and directed that the Clerk of Court close the case pending appeal. ECF42.

**B.     Statement of Facts**

On March 24, 2024, Patrick entered the DCSB building with the intent to attend a public meeting. ECF1 at ¶4. She videotaped her entire experience.[3] Upon entering the building, she was asked by staff to produce identification. *Id.* at ¶5; Video at 0:26. Patrick said she did not have identification with her and asked to speak to a supervisor. ECF1 at ¶6. Staff summoned Graham who clarified with Patrick that DCSB policy required she present identification prior to entering the building. ECF1 at ¶6-7; Video at 1:16-1:37. Patrick stated she did not care about the policy and had a right to enter. Video at 1:38-44, 1:59-2:02. She also identified herself as a member of the press. *Id.* at 12:44. Patrick eventually asked to speak to Graham's supervisor. ECF1 at ¶8; Video at 3:58. Soon thereafter, Wilson arrived to address Patrick's entry into the building. ECF1 at ¶9; Video at 11:46, 12:42.

---

[3] Patrick attached to her Complaint, and incorporated throughout, a video she took during her visit to the DCSB. *See* ECF1, Exhibit 1. At the motion to dismiss stage, the Court is to review the video footage, construing all ambiguities of the footage in favor of the plaintiff. *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024). "But where a video is clear and obviously contradicts the plaintiff's alleged facts, [the court accepts] the video's depiction instead of the complaint's account, and views the facts in the light depicted by the video." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1277-78 (11th Cir. 2023). The video, which is just over nineteen minutes long, is cited as follows: "Video at X:XX." A version of Patrick's encounter with Graham and Wilson is also available on-line. *See* https://www.youtube.com/watch?v=vmGsiq79yz0&list=PLjI8ghcyoWYkp8L8SeyoMoNwyYFalgvNi&index=4 (last visited June 24, 2025).

Wilson ultimately granted Patrick access beyond the security checkpoint without requiring that she present identification. ECF1 at ¶10; Video at 13:00. Patrick then entered the room where the DCSB meeting was in progress. ECF1 at ¶12; Video at 14:43. She moved towards the front of the room, standing along the aisle and slightly behind those who were seated and presenting information to the DSCB. *Id.* at 14:52. No one else was standing, and there were numerous open seats. *Id.* at 14:47. While she filmed the proceedings, some of those making presentations to the board turned to see what she was doing. *Id.* at 14:52, 15:10, 15:16.

Wilson and Graham approached Patrick, and in calm, quiet, and respectful voices, asked that she either take a seat or check in with the DCSB media contact who was sitting in the back of the room. Patrick objected, stating she was press and was permitted to film the meeting. ECF1 at ¶13; Video at 15:15-15:23, 15:37, 15:43-15:57. Wilson and Graham continued to request that Patrick sit or check in with the media contact, while Patrick's responses became louder. *Id.* at 15:58-16:06, 16:11. As a result, several individuals in the room diverted their attention from the meeting and observed Patrick. Video at 15:38, 15:20, 15:55, 16:04-08. Ultimately, Wilson determined Patrick should leave. *Id.* at 16:08. Graham guided her out of the room, holding the fabric of the sleeves of her sweatshirt, but otherwise had minimal contact with her person. *Id.* at 16:11-16:22. Once the officers directed Patrick outside the

5

building, Wilson informed her she had been removed for her disruptive behavior and for not following instructions, that she was free to leave, but she was not permitted to re-enter the building to re-join the on-going meeting. *Id.* at 16:53-17:38.

## C.    Standard of Review

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim, evaluating whether the complaint contains sufficient factual allegations to state a claim for relief that is plausible on its face. *See generally*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Baker*, 67 F.4th at 1276. Likewise, the Court reviews "*de novo* a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009). However, where an appellee fails to raise legally sufficient objections to a Report and Recommendation, the Court may review for plain error. 11th Cir. R. 3-1.

## SUMMARY OF THE ARGUMENT

The District Court properly adopted the federal magistrate judge's Report and Recommendation dismissing Patrick's First Amendment claims against the officers (Counts I, II, and IV), and her excessive force claim against

Graham (Count III). As for each claim, Patrick failed to sufficiently state claims for which relief can be granted pursuant to Rules 8(a)(2) and 12(b)(6). The officers were therefore entitled to qualified immunity, and the District Court did not err in dismissing Patrick's Complaint.

On appeal, Patrick has waived her argument that the District Court erred by using a forum analysis instead of a "right of access" analysis to evaluate her First Amendment claims. Patrick failed to make a legally sufficient objection to the Magistrate Judge's Report and Recommendation as to her "right of access" argument, thereby precluding this Court's *de novo* review of the same. At most, the Court could review this claim for plain error, but will find none. The forum analysis Patrick challenges ultimately uses the same test as her proffered alternative. Hence, even if the trial court erred by using a forum analysis, Patrick's substantial rights were not affected.

Patrick has also failed to properly develop on appeal whether the DCSB's identification policy violated her First Amendment rights (Count II). Even if this argument was properly presented to this Court, Patrick's Complaint failed to sufficiently allege a First Amendment claim against the officers because there is not a clearly established right to enter a public building without having to show identification. As such, the District Court did not err in dismissing this count with prejudice.

The District Court also properly dismissed with prejudice Patrick's Count I asserting First Amendment Trespass against the officers. Her Complaint fails to sufficiently allege that when Graham and Wilson removed Patrick from the DCSB meeting for being disruptive, they violated clearly established constitutional rights. Likewise, the District Court properly dismissed Patrick's excessive force claim (Count III) against Graham because she failed to sufficiently allege that Graham seized her, and or that if he did, the seizure was unreasonable. Finally, the trial court correctly ruled that Patrick's subsequent punishment claim against Wilson (Count IV), failed to provide him with notice of the claim against him or the facts upon which that claim rests. Nor should Patrick be afforded leave to amend her complaint as doing so would be futile. She cannot plead either that she suffered a violation of clearly established First Amendment rights, or that the officers otherwise committed any constitutional wrongs against her.

For all these reasons, the District Court's Order should be affirmed, and Patrick's Complaint dismissed with prejudice.

**ARGUMENT**

I.   **THE DISTRICT COURT'S APPLICATION OF A FORUM ANALYSIS WAS APPROPRIATE TO EVALUATE PATRICK'S FIRST AMENDMENT CLAIMS (COUNT I & II) BECAUSE SCHOOL BOARD MEETINGS ARE  LIMITED PUBLIC FORUMS**

A.   **Patrick waived on appeal whether the District Court erred in using a forum analysis to evaluate her First Amendment claims (Counts I and II)**

Patrick contends "the District Court erred analyzing [her] First Amendment claim under the forum doctrine instead of the right of access doctrine." Doc.9 at 7.[4] Patrick did not raise this argument before the District Court, either in her initial response to Graham and Wilson's Motion to Dismiss, or in her objections to the Report and Recommendation. *See* ECF18; ECF29. While she did challenge the District Court's reference to a forum analysis, she did so in the context of attacking the School Board's identification policy.  She stated that the Report and Recommendation

> mistakenly goes directly to forum analysis for speech regulation, when there is no regulation or policy that needs reviewed. There is no policy about recording the meeting nor is there a policy requiring identification to enter the building or meeting. The report mistakenly believes a sign slapped up on the wall indicates a policy somewhere.

ECF29 at 1. Likewise, in her response to the officer's Motion to Dismiss, she challenged the identification policy by quoting a case that referenced, in part,

---

[4] Patrick refers to both "co-equal access" and "right of access." Doc.9 at 10-12 For consistency and ease of reference, "right of access" will be used here.

forum analyses. *See* ECF18 at 2 (quoting *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005)). Nowhere in the proceedings below, however, did she specifically identify or develop an argument supporting her current position. *See* ECF18 at 2; ECF29 at 2. It was only in her brief before this Court that Patrick claimed the trial court erred in evaluating her First Amendment claims under a forum analysis, rather than a "right of access" structure. Doc.9 at 11 (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978); *Pell v. Procunier*, 417 U.S. 817, 834 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 684-85, 707 (1974)).

Because Patrick failed to raise any "right of access" objection to the Report and Recommendation, and only raised it for the first time on appeal, the Court should decline to entertain this argument.

> [W]here a party fails to file a timely objection to a magistrate judge's report and recommendation, that party "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object." 11th Cir. R. 3-1. In the absence of a proper objection, [the Court] may review for plain error, but only "if necessary in the interests of justice." *Id.*

*Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 620 (11th Cir. 2021).[5]

*See also United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009)

---

[5] Pursuant to the Rules for the United States Court of Appeals for the Eleventh Circuit, an unpublished opinion "may be cited as persuasive authority" but is "not considered binding precedent." 11th Cir. R. 36–2. *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished

("objections to a magistrate judge's recommendation and report must be specific and clear enough to permit the district court to effectively review the magistrate judge's ruling."); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."); *Fowler v. Jones*, 899 F.2d 1988, 1092 (11th Cir. 1990) ("failure to raise an issue, objection or theory of relief in the first instance to the trial court precludes raising the matter on appeal"); *cf. Blue v. Lopez*, 901 F.3d 1352, 1357 n.3 (11th Cir. 2018) (appellate court may consider an issue raised for the first time on appeal if the question is "purely one of law"). Accordingly, Patrick has forfeited the opportunity to raise this question on appeal.

### B.    The District Court did not err by invoking a forum analysis to analyze Patrick's First Amendment claims

In the alternative, the "right to access" does not apply here, and the District Court did not commit plain error in using a forum analysis. *Fernau*, 847 F. App'x at 620. "To establish plain error, a party must show (1) an error, (2) that is plain, and (3) that affected the party's substantial rights." *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). In this regard, Patrick's argument is undeveloped and lacks merit. While she invokes "right to access"

---

opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

language and cites to cases generally outlining the doctrine's applicability, Patrick does not provide any discussion as to the contours of a "right of access" analysis, she does not address how it specifically applies to her case, nor does she map out the outcome if so applied. Doc.9 at 10-12. As such, Patrick cannot show the trial court committed error that affected her substantial rights.

The "right to access" doctrine posits the public has a qualified right to access government spaces for the purpose of gathering and disseminating information about government processes. *See e.g. Press-Ent. Co.*, 478 U.S. at 9 (". . . even when a right of access attaches, it is not absolute."); *TGP Comm., LLC v. Sellers*, No. 22-16826, 2022 WL 17484331, at *4 (9th Cir. Dec. 5, 2022) ("The First Amendment does not provide a right of free and unconditional access to all government properties and events."); *Bloedorn v. Grube*, 631 F.3d 1218, 1230 (11th Cir. 2011) ("It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government." (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985)); *Whiteland Woods, LP v. Township of West Whiteland*, 193 F.3d 177, 181 (3d Cir. 1999) ("the public's right of access is not absolute."); *Cable News Network, Inc. v. Am. Broadcasting Co.*, 518 F. Supp. 1238, 1244 (N.D. Ga. 1981) ("a right of access is qualified, rather than absolute, and is subject to limiting considerations such as confidentiality, security, orderly process, spatial limitation, and doubtless many others").

When a member of the public – or the press – believes they have been denied the opportunity to access government space to gather and disseminate information about government processes, courts employ the "experience and logic" test to evaluate the claim. *See Press-Ent. Co.*, 478 U.S. at 9-10; *Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200, 1211 (N.D. Fla. 2022). That test guides that "the First Amendment provides a right of access to a [government] proceeding or record: (1) that has historically been open to the press and general public; and (2) where public access plays a significant positive role in the functioning of the particular process in question." *Courthouse News Serv.*, 606 F. Supp. 3d at 1211 (internal citations, quotations, and alterations omitted). However, even when a right of access is identified, the right is qualified and may be subject to reasonable time, place, and manner restrictions. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Blackston v. Ala.*, 30 F.3d 117, 120 (11th Cir. 1994); *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1121 (M.D. Fla. 2019). Accordingly, the government can impose reasonable limitations on how individuals should behave in its space, and can look to forum analyses to help craft those restrictions. *Patrick v. McGuire*, No. 8:24-cv-000-MSS-NHA, 2024 WL 4803217, at *5 (M.D. Fla. Nov. 15, 2024) ("Eleventh Circuit precedent dictates

that the Court apply the forum analysis . . . .");[6] *Tisdale v. Gravitt*, 51 F. Supp. 3d 1378, 1388-89 (N.D. Ga. 2014) (applying a forum analysis to evaluate limits on a rights of access claim); *Sheets*, 415 F. Supp. 3d at 1121-22 (same). *See also TGP Comm., LLC*, 2022 WL 17484331 at *4 (using a forum analysis); *John K. MacIver Instit. for Pub. Pol'y v. Evers*, 994 F.3d 602, 609, 613-14 (7th Cir. 2021) (same); *Whiteland Woods, LP*, 193 F.3d at 182 (same); *Nextstar Media, Inc. v. Walters*, CIV-24-980-J, 2024 WL 5679196, at *2 (W.D. Okla. Sept. 25, 2024) (same); *Mocek v. City of Albuquerque*, CIV-11-1009 JB/KBM, 2013 WL 312881, at *52 (D. N.M. Jan. 14, 2013) (same).

As relevant here, circuit precedent establishes that city council meetings (and by extension, school board meetings), are limited public fora. *McDonough v. Garcia*, 116 F.4th 1319, 1328-29 (11th Cir. 2024). Any restrictions placed on First Amendment activity in those spaces must not discriminate on the basis of viewpoint, and "must be reasonable in light of the purpose served by the forum." *Id.* at 1328 (citing *Good News Club v. Milford Central School*, 533 U.S. 98, 106-07 (2001)). In this regard, "the Eleventh Circuit has consistently recognized that the government has a significant interest in conducting

---

[6] This lawsuit was also brought by Patrick, where she asserted similar constitutional claims against individual government actors in Pasco County, FL. *Patrick*, 2024 WL 4803217 at *3. On the defendants' Motion to Dismiss, the District Court dismissed the case with prejudice. *Id.* at *8.

orderly, efficient meetings of public bodies." *Tisdale*, 51 F. Supp. 3d at 1389 (internal citations omitted).

Here, the officers do not contest Patrick's right to enter the DCSB building, to attend a board meeting, or to record the same. *See e.g.*, *Smith*, 212 F.3d at 1333 (recognizing right to record conduct of public officials on public property); *Blackston*, 30 F.3d at 120 (same); *Sheets*, 415 F. Supp. 3d at 1121 (assuming without deciding that a First Amendment right exists to film city employees while they were working at City Hall). As such, a "right of access" analysis is unnecessary in this case. There is no present question or controversy regarding whether the DCSB building, or its meetings, were accessible to the public. *Compare e.g., Press-Ent*, 478 U.S. at 13-14 (evaluating right of access to pretrial hearings); *Globe Newspaper Co.*, 457 U.S. at 606-07 (evaluating right of access to a criminal trial); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980); *Pell*, 417 U.S. at 834 (evaluating right of access to prisons); *Branzburg*, 408 U.S. at 684-85, 707 (evaluating right of access to a crime scene or disaster area); *Pitta v. Medeiros*, 90 F.4th 11, 20 (1st Cir. 2024) (evaluating right of access in IEP meeting); *TGP Comm'n LLC*, 2022 WL 17484331, at *2 (evaluating right of access to press briefings); *John K. MacIver Inst. for Pub. Pol'y*, 994 F.3d at 608 (same); *IndexNewspapers LLC v. U.S. Marshals Servs.*, 977 F.3d 817, 821 (9th Cir. 2020) (evaluating right of access to areas deemed an unlawful assembly); *P.G. Pub. Co. v. Aichele*, 705

F.3d 91, 95 (3d Cir. 2013) (evaluating right of access to polling places); *Mocek*, 2013 WL 312881, at *2-3 (evaluating right of access to airport security checkpoints).

Rather, this case centers on whether the restrictions Patrick encountered when she visited the DCSB building (i.e., the identification requirement; removal for being disruptive) were reasonable. A forum analysis assists in making that determination. As such, the District Court did not err in invoking a forum analysis to evaluate Patrick's First Amendment claims.

Even if the District Court should have evaluated Patrick's First Amendment claims using something other than a forum analysis, Patrick cannot show this purported error affected her substantial rights. *Turner*, 474 F.3d at 1276 (articulating plain error standard). To this point, Patrick references the D.C. Circuit's decision in *Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022), as providing the appropriate framework for evaluating her claim. Doc.9 at 11-12. There, the court assessed a right of access claim by asking whether restrictions on access to the space discriminated on the basis of viewpoint, and whether the restrictions were "reasonable in light of the purpose served by the forum." *Price*, 45 F. 4th at 1072. This test mirrors the test articulated by this Court in *McDonough*. *See* 116 F.4th 1328. *See also Patrick*, 2024 WL 4803217 at *6-7 (discussing similarity between tests). Because the tests are the same and would result in similar outcomes, there is

16

no error. Accordingly, the District Court did not faulter in invoking a forum analysis, and even if it did, that mistake did not affect Patrick's substantive rights.

## II. PATRICK FAILED TO PLAUSIBLY ALLEGE A CLAIM OF FIRST AMENDMENT PRIOR RESTRAINT AGAINST THE OFFICERS AND OTHERWISE WAIVED THE RIGHT TO CHALLENGE THE VALIDITY OF THE DCSB'S IDENTIFICATION REQUIREMENT

### A. Patrick failed to sufficiently develop on appeal a challenge to the DCSB's identification requirements

Patrick fails to make any arguments before this Court challenging the DCSB's identification policy. As such, she has abandoned this issue and the Court should uphold the District Court's dismissal of her claims associated with the same.

A party abandons a claim or issue on appeal when she only makes passing reference to it in her appellate brief or only raises it in a perfunctory manner without supporting arguments or authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014). In her brief, Patrick identifies one of the issues on appeal as follows: "Is it a violation of my right of access to hold an open meeting in a building that requires identification to enter?" Doc. 9 at 7. She does not, however, address this issue anywhere else in her brief. This Court should therefore deem the matter abandoned and affirm the District Court's rulings regarding the identification requirement.

**B.    Patrick failed to sufficiently allege a First Amendment claim against the officers because there is not a clearly established right to enter a public building without having to show identification**

Should this Court choose to evaluate Patrick's identification policy challenge in Count II, her claim lacks merit, and the District Court was correct to dismiss her Complaint on those grounds.

Construing Patrick's *pro se* Complaint liberally and taking the allegations in her Complaint as true, *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990), Patrick appears to allege that she was delayed from entering the DCSB building because of the identification requirement, and that in some fashion, that delay constituted a prior restraint. Patrick's Complaint fails to plausibly allege a First Amendment prior restraint claim against the officers, *Twombly*, 550 U.S. at 555, and also fails to show she had a clearly established right to enter a public building without having to show identification. *See Baxter v. Santiago-Miranda*, 121 F.4th 873, 887 (11th Cir. 2024) ("Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Patrick has not sufficiently plead that the identification requirement places an unreasonable restriction on her right to access the DCSB public

meeting. Indeed, case law suggests an identification requirement is lawful. *See e.g., Foti v. McHugh*, 247 F. App'x 899, 901 (9th Cir. 2007); *United States v. Smith*, 426 F.3d 567, 575 (2d Cir. 2005); *Torres v. Pasco Cnty. Bd. of Cnty. Comm'rs*, 8:21-cv-892-TPB-JSS, 2022 WL 1121041, *1 (M.D. Fla. April 14, 2022); *Hass v. Monier*, No. NH CA 80-169 MML, 2009 WL 1277740, at *7 (D.N.H. April 24, 2009); *United States v. Cruz*, 407 F. Supp. 2d 451, 452 (W.D.N.Y. 2006); *Cornett v. Sixteen Unknown Named Court Marshals*, No. 91 Civ. 4795 (JFK), 1992 WL 96367, at *3 (S.D.N.Y. Apr. 28, 1992). Additionally, Patrick has not sufficiently alleged that Graham and Wilson were on notice that the identification requirement was unlawful. Accordingly, she has failed to carry her burden showing that she had a clearly established right to enter a public building to attend a meeting without presenting some form of identification. *See generally Baxter*, 121 F.4th at 888 (discussing qualified immunity defense). Therefore, the District Court did not err when it dismissed Count II with prejudice.

## III.  PATRICK FAILED TO SUFFICIENTLY ALLEGE A FIRST AMENDMENT CLAIM AGAINST THE OFFICERS BECAUSE THERE IS NOT A CLEARLY ESTABLISHED RIGHT TO BEHAVE WITHOUT RESTRICTIONS IN A LIMITED PUBLIC FORUM

The District Court properly dismissed Patrick's First Amendment trespass claim against the officers (Count I). In her Complaint, Patrick asserts that when Graham and Wilson removed her from the school board meeting,

19

they violated her First Amendment rights. ECF1 at ¶15-18.[7] In this respect, she appears to assume that once she was admitted to the public meeting as a self-identified member of the press, she had a constitutional right to behave without restriction. ECF29 at 3; Doc.9 at 13. She is incorrect.

Patrick's right to access and record the DCSB meeting was reasonably limited "in light of the purpose served by the forum." *McDonough*, 116 F.4th at 1328 (citing *Good News Club*, 533 U.S. at 106-07). As such, Graham and Wilson could ensure that the meeting was conducted in an orderly and efficient manner. *Tisdale*, 51 F. Supp. 3d at 1389.

Here, the video shows that once Patrick entered the meeting, she did not sit down but stood along an aisle while filming. Video at 14:52. As a result of her presence, individuals who were addressing the school board were

---

[7] On appeal, Patrick's arguments regarding her removal from the meeting morph from focusing on her right to be present and record the meeting, to claiming Graham and Wilson retaliated against her. Doc.9 at 13, 18. Likewise, she argues on appeal that the members of the school board may have had authority to consider removing her from the meeting, but not Graham and Wilson, and hence the officers violated school board policy by doing so. *Id.* at 7, 14. Even if true, the mere suggestion of a policy violation is not sufficient to state an actionable constitutional harm. *See e.g., Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Charles v. Johnson*, 18 F.4th 686, 702 (11th Cir. 2021) (court declined to consider allegations that defendant officer violated departmental policy when evaluating whether officer violated U.S. Constitution). Moreover, Patrick did not raise either argument below and therefore has waived them on appeal. *See generally*, *Fernau*, 847 F. App'x at 620; Schultz, 565 F.3d at 1360; Fowler, 899 F.2d at 1092.

distracted and turned to look at her. *Id.* at 14:52, 15:10-15:16. She became a further disruption when, upon being asked by Graham and Wilson to take a seat, or in the alternative, check in with the school board media contact sitting in the back of the room, she refused. *Id.* at 15:15, 15:23-15:37, 15:43-15:47. The officers attempted to reason with her and gave her various options for how she could stay in the meeting while not being disruptive, but Patrick did not cooperate and became increasingly vocal, garnering even more turned heads from those at the meeting. *Id.* at 15:38, 15:20, 15:55, 16:04-08. Ultimately, Wilson determined Patrick was being disruptive and should leave. *Id.* Graham then guided her from the room. *Id.* at 16:11-16:22. Based on these facts, Patrick has failed to plausibly allege that Wilson and Graham violated her First Amendment rights.

The law allows reasonable restrictions to be placed on one's right of access, *see Smith*, 212 F.3d at 1333; *Blackston*, 30 F.3d at 120; *Sheets*, 415 F. Supp. 3d at 1121, and Patrick has not plausibly alleged that she otherwise had a clearly established right to engage in disruptive behavior during a public meeting, or that she could not be removed for the same. Nor has she alleged that she had a clearly established right to remain standing during the meeting, or refuse to check in with the DCSB media point-person after she self-identified as a member of the press. Therefore, the District Court did not err in dismissing Count I with prejudice, and this Court should affirm.

## IV.   PATRICK FAILED TO SUFFICIENTLY ALLEGE A CLAIM OF EXCESSIVE FORCE AGAINST GRAHAM BECAUSE HE DID NOT SEIZE HER AND HIS ACTIONS WERE NOT UNREASONABLE

The District Court correctly determined Patrick failed to state an excessive force claim against Graham (Count III). Taking as true the facts alleged in her Complaint, and viewing the video attached thereto, *see Baker*, 67 F.4th at 1277-78; *Access Now, Inc.*, 385 F.3d at 1331, Patrick failed to satisfy the pleading standards laid out in Rules 8(a)(2) and 12(b)(6). She did not plausibly allege she was seized by Graham, and even if he did seize her, Patrick did not plausibly allege the seizure was unreasonable. Accordingly, Graham is entitled to qualified immunity, and this Court should affirm the District Court's dismissal of Count III.

"To assert a Fourth Amendment claim based on the use of excessive force, the plaintiff[]must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1166 (11th Cir. 2005). The test for determining whether an officer has seized a citizen, is "whether a reasonable person would feel free to terminate the encounter." *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021) (citing *United States v. Drayton*, 536 U.S. 194, 201-02 (2002); *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988); *Immigr. & Naturalization Serv. v. Delgado*, 466 U.S. 210, 215 (1984)).

In this context, the Supreme Court has stressed that not "every physical contact between a government employee and a member of the public [transforms that encounter] into a Fourth Amendment seizure. A seizure requires the use of force *with intent to restrain*." *Torres v. Madrid*, 592 U.S. 306, 317 (2021)  (emphasis in original). "A person who is told to leave one place but remains free to go anywhere else that he wishes can undoubtedly terminate his encounter." *Peery v. City of Miami*, 977 F.3d 1061, 1071 (11th Cir. 2020) (citing and quoting *Florida v. Bostic*, 501 U.S. 429, 439 (1991); *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015)). Likewise, "[t]he fact that a person is not free to leave on his own terms at a given moment . . . does not [] by itself, mean that the person has been 'seized' within the meaning of the Fourth Amendment." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). Police often ask individuals to temporarily leave public spaces, *Salmon*, 802 F.3d at 253, and doing so does not automatically trigger a constitutional violation. *Id.*

Moreover, "police may take a person by the elbow or employ comparable guiding force short of actual restraint to ensure obedience with a departure order." *Id.* Such conduct "without more, [is not] a seizure under the Fourth Amendment as long as the person is otherwise free to go where he wishes." *Id. See also Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 522-24 (6th Cir. 2019) (officers' removal of plaintiff from public meeting did not constitute a

seizure where plaintiff violated council rules and refused to leave, even where officers held plaintiff's hand and arm, and used force guiding her out of the building, but where she was unrestricted once outside); *Sheppard v. Beerman*, 18 F.3d 147, 153 (2nd Cir. 1994) (no unlawful seizure where individual was escorted out of courthouse but remained otherwise free to go anywhere else he desired).

By contrast, courts have reasoned that a seizure may exist where police order a citizen to leave a public space, and that order is "accompanied by the use of sufficient force intentionally to restrain a person and gain control of his movements." *Salmon*, 802 F.3d at 255 (finding a seizure where officer grabbed the citizen by the collar and twisted his arm). *See also e.g.*, *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014) (seizure where officer grabbed citizen's hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth); *Harris v. McAlistor*, 22-cv-75-LJV-JJM, 2023 WL 5830337, at *8 (W.D. N.Y. Sept. 8, 2023) (plaintiff sufficiently plead seizure by alleging officer grabbed him by the shirt and shoved him out of the building); *Plonka v. Borough of Susquehanna*, 3:17-cv-00262, 2017 WL 1036478, at *3 (M.D. Pa. March 17, 2017) (plaintiff sufficiently plead a seizure when he alleged officer grabbed his arm, twisted it behind his back and pushed him to building exit, resulting in an open wound that did not completely heal despite treatment from multiple medical providers).

24

Patrick did not sufficiently plead Graham seized her. At most, the video shows Graham provided a guiding force by holding onto the sleeves of Patrick's sweatshirt as he moved her out of the meeting and building. Video 16:11-16:22. Graham did not, however, prevent Patrick from being "otherwise free to go where" she wished, *Salmon*, 802 F.3d at 253, or in any way prevented her from terminating her encounter with him. *Knights*, 989 F.3d at 1286; *see also Peery*, 977 F.3d at 1071; *Chandler*, 695 F.3d at 1199. Because Patrick did not sufficiently allege Graham seized her, her excessive force claim cannot proceed.

Should this Court nonetheless determine that Graham did seize Patrick, his actions were reasonable. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (claims for excessive force are analyzed under the reasonableness standard); *Charles*, 18 F. 4th at 699 (court examines the question of excessive force from the perspective of a reasonable officer). In this context, "not every push or shove, even if it may seem unnecessary in [the] peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 398. Therefore, "[e]ven if unnecessary, any force [Officer Graham] used against [Patrick] was *de minimis*." *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011).

Patrick alleges, at most, that Graham "grabbed" her, forced her to walk out of the meeting, and "push[ed] her all the way out of the building." ECF1 at ¶14, 20. She does not however, give any indication as to the extent of the force Graham used, or if she suffered any injuries. Additionally, the video

depicts that at most, Graham clutched the sleeves of Patrick's sweatshirt as he guided her out of the building. Video 16:11-16:22.

"[T]he application of *de minimis* force, without more, [does] not support a claim for excessive force in violation of the Fourth Amendment," nor [does] a "minimal amount of force and injury . . . defeat an officer's qualified immunity in an excessive force case." *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000). By example, this Court rejected a claim of excessive force where "an officer grabbed the plaintiff from behind the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." *Nolin,* 207 F.3d at 1255. *See also e.g.*, *Croom,* 645 F.3d at 1245-52 (force *de minimis* where an officer placed his foot on the plaintiff's back and held her to the ground for up to ten minutes); *Crosby v. Monroe County,* 394 F.3d 1328, 1334-35 (11th Cir. 2004) (force *de minimis* where officer put foot in the face of citizen and caused no injury); *Jones v. City of Dothan,* 121 F.3d 1456, 1460 (11th Cir. 1997) (force *de minimis* where officers pushed the plaintiff against a wall, kicked his legs apart, put his arms above his head, and removed his wallet from his pants pocket); *Gold v. City of Miami,* 121 F.3d 1442, 1444 (11th Cir. 1997) (force *de minimis* where individual was handcuffed too tightly and for twenty minutes). Patrick's claims of being "grabbed," "forced," and "pushed," ECF1 at ¶14, 20,

are comparatively milder than the *de minimis* cases referenced above. Accordingly, even if Graham seized Patrick and used force doing so, Patrick has not sufficiently alleged that Graham's use of force was unreasonable and violated the Fourth Amendment. This Court, therefore, should affirm the District Court's dismissal of Count III with prejudice.

## V.    PATRICK FAILED TO PLAUSIBLY ALLEGE A CLAIM OF "SUBSEQUENT PUNISHMENT" AGAINST WILSON, AND OTHERWISE WAIVED HER RIGHT TO CHALLENGE THE DISTRICT COURT'S DISMISSAL OF THIS COUNT

### A.    Patrick failed to raise on appeal the District Court's dismissal of Count IV

Patrick fails to make any arguments before this Court challenging the District Court's dismissal of Count IV. As such this Court should uphold the District Court's ruling dismissing that claim. *See Sapuppo*, 739 F.3d at 680-83 (district court's order should be affirmed where party failed to raise issue on appeal); *Campaign for a Prosperous Georgia v. S.E.C.*, 149 F.3d 1282, 1287 (11th Cir. 1998) (issues not raised in briefs are considered abandoned); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) (same).

The District Court dismissed Patrick's Count IV against Wilson, but granted her leave to amend that count by a specific date. ECF32 at 6.  Prior to that date, however, Patrick filed a Notice of Appeal with this Court which indicated she was challenging the District Court's entire order. *See* Fed. R.

27

APP. P. 3(c) (a notice of appeal must "designate the judgment, order or part thereof appealed from"). *See* ECF33 (filed 3/19/25). Only after filing her notice of appeal, did Patrick file an Amended Complaint with the District Court, solely as to Count IV. *See* ECF 35 (filed 3/25/25).[8]

By filing her Notice of Appeal prior to exercising the opportunity to amend her complaint, Patrick divested the District Court of jurisdiction over her action, and converted the District Court's dismissal of Count IV into a final order. *See In re Walker v. Walker*, 515 F.3d 1204, 1211 (11th Cir. 2008) (citing *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982)) (upon a party's filing of a notice of appeal, the trial court is divested of jurisdiction); *Stevens v. Plumbers & Pipefitters Local 219*, 812 F. App'x 815, 818 (11th Cir. 2020) ("By appealing the district court's dismissal of his complaint before filing an amended complaint, Plaintiff caused the district court's dismissal order to become a final, appealable order."). Therefore, what is presently before this Court is Patrick's appeal of the District Court's entire decision, including its order dismissing Count IV.

In her filings before this Court, Patrick makes no reference to, or argument regarding, the sufficiency of her pleadings regarding Count IV. Accordingly, Patrick has waived the matter on appeal and this Court should

---

[8] As noted *supra*, the District Court has since struck the Amended Complaint. *See* ECF42.  *See also* note 2.

affirm the District Court's ruling dismissing Count IV. *Sapuppo*, 739 F.3d at 680-83; *Campaign for a Prosperous Georgia*, 149 F.3d at 1287; *Marek*, 62 F.3d at 1298 n.2.

### B.    Patrick failed to plausibly allege a claim of "subsequent punishment" against Wilson

Should this Court examine Patrick's "subsequent punishment" claim, it will find that her allegations fail to satisfy the pleading requirements of Rules 8(a)(2) and 12(b)(6), and represents, at best, "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  As such, the District Court properly dismissed Count IV.

This count is solely made up of two sentences containing sparse factual assertions that are tenuously connected to a confused formulation of a First Amendment claim. Patrick asserts that "Wilson was at all time[s] acting under color of law when he put a privacy strike on [her] news report and [had] . . . it removed from [Y]ou[T]ube. Wilson engaged in a form of prior restraint known as subsequent punishment . . . ." ECF1 at ¶21-22.

At the outset, Patrick fails to sufficiently articulate a constitutional harm. She accuses Wilson of engaging in a "form of prior restraint known as subsequent punishment." ECF1 at ¶22. However, courts have consistently noted there are distinctions between First Amendment violations that constitute prior restraints, and those which should be categorized as

subsequent punishments. *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017) ("Prior restraints contrast with 'subsequent punishments,' which regulate a given type of speech by penalizing the speech only *after* it occurs." (emphasis in original)).  *See also e.g., Alexander v. United States*, 509 U.S. 544, 553-54 (1993) (noting distinction between prior restraint and subsequent punishments). Nowhere in her pleadings below does Patrick cite to authority suggesting the two can be merged, nor does she provide any analysis for why, based on the facts laid out in her Complaint, Wilson committed some form of newly fashioned First Amendment wrong. *See Twombly*, 550 U.S. at 555 (rule 12(b)(6) requires that the defendant be provided notice of the claim against her and the grounds upon which it rests).

Patrick's Complaint also does not indicate how the video's removal from YouTube is properly attributed to Wilson's status as a state actor; how and whether Wilson was the party ultimately responsible for YouTube's decision to remove the video; or how the purported removal of the video punished her.[9] At bottom, the Complaint fails to plausibly articulate how the alleged removal of the video from the internet – whether by Wilson or YouTube – violated Patrick's constitutional rights.

---

[9] A version of the video remains available on YouTube.  *See supra* note 3.

Accordingly, Patrick has failed to provide Wilson "fair notice of what the claim [against him] is, and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). At most, she provides mere "labels and conclusions." *Id.* Nor do any of her allegations in Count IV suggest it was clearly established that a state actor's request to remove a video from YouTube violates the First Amendment.

Finally, Patrick should not be afforded another proverbial "bite of the apple" to further amend this claim. *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 1353, 1359 (M.D. Fla. 2012). For all the reasons stated above, amendment is futile. *Grimes v. Florida*, 71 F. Supp. 3d 1319, 1323 (M.D. Fla. 2014). Accordingly, the District Court properly dismissed Count IV, and this Court should affirm.

## <u>CONCLUSION</u>

The Court of Appeals should affirm the District Court's dismissal of Patrick's Complaint. The District Court did not err by using a forum analysis to evaluate Patrick's First Amendment claims, nor did she properly preserve that issue for appeal. Likewise, as to each of the Counts in her Complaint, the District Court properly determined that the officers were entitled to qualified immunity because Patrick failed to plausibly state claims for which relief could be granted, and failed to plead that her asserted constitutional rights were

clearly established. For these reasons, and all those developed above, Appellees Graham and Wilson respectfully request this Court affirm the District Court's dismissal of the counts against them, with prejudice.

Respectfully submitted,

OFFICE OF GENERAL COUNSEL
CITY OF JACKSONVILLE

*/s/ Mary Margaret Giannini*

**MARY MARGARET GIANNINI (1005572)**
ASSISTANT GENERAL COUNSEL
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100 – Telephone
(904) 255-5120 – Facsimile
mgiannini@coj.net; ipatori@coj.net
*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this motion complies with the requirements of FED. R. APP. P. 32 and Rule 28-1 of this Court, and further certifies that the word count for the foregoing motion, as counted by the word processing system used in preparing this motion, is 7619.

*/s/ Mary Margaret Giannini*

**MARY MARGARET GIANNINI**
(FBN 1005572)
ASSISTANT GENERAL COUNSEL
*Counsel for Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of June, 2025, a true and correct copy of the foregoing was filed with the Clerk of Court for uploading to the CM/ECF system which will send notice of electronic filing to all counsel of record who are participants in the Court's ECF filing system. The undersigned also sent an electronic copy to Appellant via her email address at thejtownpress@gmail.com.

*/s/ Mary Margaret Giannini*
**MARY MARGARET GIANNINI**
ASSISTANT GENERAL COUNSEL